UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAN DAENZER,<br><br>          Plaintiff,<br>  -against-<br><br>DEREK SMITH LAW GROUP, PLLC, and<br>ALEXANDER GABRIEL CABECEIRAS, ESQ.,<br>individually,<br><br>          Defendants. | **Dkt. No.: 25-cv-07317**<br><br>**FIRST AMENDED<br>COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JAN DAENZER ("Plaintiff"), by and through his attorneys, Joseph & Norinsberg, LLC, alleges as follows against DEREK SMITH LAW GROUP, PLLC and ALEXANDER GABRIEL CABECEIRAS, ESQ. (collectively, the "Smith Defendants" or "Defendants"), upon personal knowledge as to himself and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This is a legal malpractice action arising from Defendants' grossly negligent handling of a meritorious sexual abuse lawsuit brought under New York's Adult Survivors Act in the Supreme Court, New York County.

2. Plaintiff seeks damages for the complete loss of that case—loss caused not by the facts, not by the law, but by Defendants' inexcusable omissions of basic claims and failure to use dispositive evidence in their possession.

## PRELIMINARY STATEMENT

3. This case is not about hindsight or litigation risk. It is about the abandonment of core duties every competent lawyer understands: plead all viable claims, present decisive evidence,

1

and confront falsehoods head-on.

4. Plaintiff was the victim of egregious sexual abuse by a manager at Wilhelmina Models, while Wilhelmina sponsored him for an H-1B visa. In sworn federal filings, Wilhelmina's Executive Director certified that Plaintiff was their employee—facts that, if presented, would have judicially estopped Wilhelmina from denying employment.

5. Defendants had those immigration filings from the start. They were not buried in discovery. They were in the client's file, stamped with the government's seal, and contained sworn admissions.

6. Defendants never used them. They allowed Wilhelmina to mislead the Court into believing Plaintiff was never an employee, without citing federal law making such an H-1B petition impossible unless the petitioner is the employer.

7. Compounding their negligence, Defendants never pleaded negligent hiring, supervision, and retention ("NHSR")—a cause of action available under both New York and California law, entirely independent of employee status, and a staple in sexual abuse litigation.

8. By the time Plaintiff retained undersigned counsel, the damage was done. The Court refused to renew or reargue, not because the facts were weak, but because the critical evidence had been withheld when it mattered.

9. The Court did not reject Plaintiff's story. It rejected Defendants' lawyering.

10. Because of these avoidable failures, Plaintiff lost forever the opportunity to hold Wilhelmina accountable and to obtain the compensatory and punitive damages his case warranted.

**STATEMENT OF FACTS**

11. Plaintiff retained Defendants in late 2022 to represent him in a high-stakes sexual

2

abuse lawsuit against Wilhelmina Models and its manager, Osborne, who sexually abused Plaintiff while both were employed by Wilhelmina.

12. Wilhelmina had sponsored Plaintiff's H-1B visa application, a petition sworn under penalty of perjury by Wilhelmina's Executive Director, Christine Sugrim, certifying that Plaintiff was their employee from April 15, 2003, through January 20, 2006.

13. These immigration filings were definitive, official admissions by Wilhelmina, conclusively establishing the existence of an employment relationship essential to Plaintiff's claims.

14. Despite possessing these documents, Defendants never filed or cited them in opposition to Wilhelmina's motions, nor did they inform the Court or argue judicial estoppel based on Wilhelmina's prior sworn statements.

15. Wilhelmina denied Plaintiff's employment status in court filings and argued California law applied, undermining Plaintiff's claims.

16. Further, Defendants failed to plead negligent hiring, supervision, and retention ("NHSR") claims—critical and independent causes of action that do not require an employment relationship but were essential in light of Wilhelmina's denials regarding Plaintiff's employment.

17. As a result of these failures, Wilhelmina's motion for summary judgment was granted on May 28, 2025, dismissing all Plaintiff's claims.

18. Plaintiff's successor counsel moved to renew and reargue based on the undisclosed immigration evidence, but the Court refused, explicitly stating the documents were in Defendants' possession throughout the litigation.

19. Plaintiff's case was lost not because of a lack of evidence or legal merit, but because Defendants negligently failed to show the Court critical evidence establishing that Wilhelmina

was, in fact, Plaintiff's employer, and negligently failed to plead fundamental claims, extinguishing Plaintiff's right to justice and compensation.

## JURISDICTION AND VENUE

20. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the parties are completely diverse and the amount in controversy exceeds $75,000.

21. Venue is proper under 28 U.S.C. § 1391(b)(2) because the acts and omissions giving rise to these claims occurred in this District.

## PARTIES

22. Plaintiff JAN DAENZER is a citizen of Germany who resides in Frankfurt am Main, Germany.

23. Defendant DEREK SMITH LAW GROUP, PLLC is a New York law firm with its principal place of business at 450 Seventh Avenue, 30th Floor, New York, New York 10123.

24. Defendant ALEXANDER GABRIEL CABECEIRAS, ESQ., is an attorney licensed to practice law in New York and, at all relevant times, acted as counsel to Plaintiff in the underlying action.

## DETAILED ALLEGATIONS

*Initial Pleadings and Omissions*

25. Defendants were retained in late 2022 to prosecute Plaintiff's claims arising from Osborne's sexual abuse while both were affiliated with Wilhelmina. Defendants drafted and filed the initial and amended complaints in the underlying action, conducted all discovery, and prepared and filed Plaintiff's opposition to Wilhelmina's motion for summary judgment, thereby shaping the evidentiary record and the legal theories presented to the court.

26. During Defendants' representation, Plaintiff provided them with the certified H-1B

4

petition, underlying Labor Condition Application, and related immigration filings that Wilhelmina submitted to the United States government to secure Plaintiff's work authorization (collectively, the "Immigration Filings").

27. In the Immigration Filings, Wilhelmina's Executive Director, under penalty of perjury, expressly identified Wilhelmina as Plaintiff's employer, set forth Plaintiff's dates of employment, identified New York as Plaintiff's worksite, and described the nature of Plaintiff's duties performed on Wilhelmina's behalf. (Ex. D)

28. During the period of Osborne's abuse, Plaintiff lived and worked primarily in New York City, performed his modeling work for Wilhelmina in New York, and was supervised by Osborne out of Wilhelmina's New York office.

29. The New York Legislature enacted the Adult Survivors Act to provide a forum and remedy for survivors of sexual abuse whose claims would otherwise be time-barred, including claims arising from abuse connected to New York-based institutions and employment relationships. The Adult Survivors Act reflects a strong New York public policy favoring adjudication of such claims in New York courts.

30. In the Immigration Filings, Wilhelmina itself represented to the United States government that it employed Plaintiff in New York during the relevant period, identified New York as Plaintiff's worksite, and described Plaintiff's duties for Wilhelmina in New York.

31. Reasonably competent counsel would have used these facts, together with established New York conflicts-of-law principles, to argue that New York's interests and the Adult Survivors Act's remedial public policy outweighed the contractual choice-of-law provision relied upon by Wilhelmina, and that applying California's shorter limitations period to bar Plaintiff's Adult Survivors Act claims would improperly undermine that policy.

32. However, Defendants did not meaningfully develop or preserve that argument in the underlying action and did not create an evidentiary or legal record tying Wilhelmina's Immigration Filings and other New York contacts to the choice-of-law analysis. As a result, the court applied California law and its limitations periods to dismiss Plaintiff's claims without the benefit of the arguments and record reasonably competent counsel would have presented.

33. On January 16, 2023, Defendants filed a Complaint asserting claims for Assault, Battery, Intentional Infliction of Emotional Distress, and violations of the NYSHRL and NYCHRL. (Ex. A)

34. Defendants failed to plead negligent hiring, supervision, and retention ("NHSR") claims under New York or California law, despite their availability and critical importance.

35. Competent counsel in sexual-abuse litigation routinely investigate and plead claims for negligent hiring, supervision, and retention against institutional defendants whose employees or agents commit abuse. Such claims seek to hold the institution liable for its own failure to exercise reasonable care in selecting, supervising, and retaining the abuser.

36. Here, Wilhelmina knew or, in the exercise of reasonable care, should have known of facts indicating that Osborne posed a risk of sexually abusing or exploiting models under his supervision, yet failed to take reasonable steps to prevent or stop his misconduct.

37. Additionally, Wilhelmina's centralized corporate structure and New York-based corporate account funding the operations of its various "agencies" further demonstrate that the New York corporate entity had the ability and responsibility to supervise Osborne's conduct across offices.

38. Negligent hiring, supervision, and retention claims under New York and California law do not turn on whether the plaintiff qualifies as an "employee" for purposes of the New York

State or City Human Rights Laws, and are governed by different elements and, in relevant respects, different limitations and accrual principles than the discrimination claims the court dismissed in the underlying action.

39. Reasonably competent counsel would have investigated and pleaded negligent hiring, supervision, and retention claims against Wilhelmina under the governing law and would have developed the factual record necessary to support those claims. Had Defendants done so, there is a substantial likelihood that at least those claims would have survived dismissal and remained available for adjudication or settlement, preserving significant value in Plaintiff's underlying case.

40. On March 27, 2023, Wilhelmina filed an Answer denying any employment relationship and asserting California law applied. (Ex. B)

41. Defendants did not amend the complaint or plead NHSR claims despite this denial.

*Wilhelmina's Banking Records and Corporate Account*

42. In the underlying action, Wilhelmina produced and relied on banking records and checks relating to Plaintiff's compensation and the payment of his immigration filing fees. These documents included checks issued in the name "Wilhelmina West" and a stop-payment confirmation that Wilhelmina used to argue that Plaintiff's relationship was exclusively with its Los Angeles "agency." (Ex. J).

43. Those banking records in fact show that the checks in question were drawn on a JP Morgan Chase account in New York bearing a New York routing number, and that the underlying account (No. 615743684) is held in the name of Wilhelmina International Inc. (formerly Wilhelmina Models Inc.), the corporate entity headquartered at 300 Park Avenue South in New York City, the same New York-based corporate entity that sponsored Plaintiff's

7

H-1B visa.

44. This evidence further confirms that Wilhelmina's New York corporate entity controlled and funded the operations of the Los Angeles "agency," functioned as the single employer for models represented through its various offices, and maintained a substantial New York nexus to Plaintiff's work and compensation. Far from distancing Plaintiff from New York, the checks on which Wilhelmina relied actually demonstrate that Wilhelmina's New York-based corporate entity paid Plaintiff and his immigration costs.

***The Amended Complaint and Critical Immigration Documents***

45. On June 3, 2024, Defendants filed an Amended Complaint. (Ex. C)

46. They included an employment agreement but again failed to plead NHSR claims or submit federal immigration filings that Wilhelmina had sworn under penalty of perjury, even though as set forth above those filings unequivocally establish Plaintiff's employment relationship with Wilhelmina and the location of his employment. (Ex. D)

47. Wilhelmina's Answer to the Amended Complaint on August 26, 2024, repeated its denial of employment status. (Ex. E)

***Summary Judgment Motion and Opposition***

48. On February 24, 2025, Wilhelmina moved for summary judgment based on Plaintiff's alleged status as an independent contractor and California law governing. (Ex. F)

49. Defendants filed opposition on March 28, 2025 but omitted Wilhelmina's crucial admissions regarding Plaintiff's employment status in its immigration filings – namely, that Plaintiff was an employee of Wilhelmina New York and worked at its Park Avenue address -- and failed to argue judicial estoppel or plead NHSR claims. (Exs. G, D)

50. Despite having the Immigration Filings in their possession, Defendants still did not

submit the H-1B petition, Labor Condition Application, or related Immigration Filings as exhibits and never placed those sworn admissions into the evidentiary record.

51. Defendants also did not themselves describe, quote, or rely on the contents of the Immigration Filings in any brief or motion they filed in the underlying action. The only reference to those documents that was ever provided to the court was a limited description filed by the opposition. This description was no substitute for submitting the Immigration Filings themselves as sworn government records.

52. Without the Immigration Filings in the record, the Court was never presented with Wilhelmina's prior sworn statements that it employed Plaintiff in New York, was never presented with those statements as party admissions or a basis for judicial estoppel, and was never given the full evidentiary foundation those filings provided for New York's interest in applying its own law to Plaintiff's claims.

53. On May 28, 2025, the Court granted summary judgment for Wilhelmina, dismissing Plaintiff's claims. (Ex. H)

*Motion to Renew and the Court's Summary Denial*

54. Plaintiff retained new counsel on June 18, 2025, after Wilhelmina's summary-judgment motion had been fully briefed and decided. By that time, the summary-judgment record was closed, and the trial court had issued an order dismissing Plaintiff's claims based on that record and the arguments advanced by Defendants. Defendants never filed a Notice of Appeal while they were still attorneys of record in the underlying action.

55. Plaintiff's new counsel diligently moved to renew and reargue the decision based on the immigration filings withheld by Defendants, however Justice Kraus declined to sign the Order to Show Cause, stating that the evidence was in Defendants' possession at the time of the

original motion. (Ex. I). This underscores the fact that any proceedings at the time of substitution were necessarily constrained by the incomplete evidentiary record and legal framing that Defendants had already created in the action.

56. Plaintiff's case was effectively lost due to Defendants' malpractice.

## SPECIFIC ACTS OF MALPRACTICE

*Failure to Submit Dispositive Immigration Evidence*

57. As the foregoing establishes, Defendants engaged in multiple negligent acts and omissions in their legal representation of Plaintiff. *First*, Defendants negligently failed to present the trial court with critical immigration filings -- documents which contained crucial admissions by Wilhelmina regarding Plaintiff's employment status and the fact that he was employed by Wilhelmina New York -- that would have established that Plaintiff was, in fact, an "employee" (not an independent contractor) and that Plaintiff did, in fact, work for Wilhelmina New York (not California). These conclusive facts, if presented to the Court, would have eviscerated Wilhelmina's specious claims and defeated their motion for summary judgment.

*Failure to Plead NHSR Under New York Law*

58. *Second*, Defendants inexplicably failed to allege an NHSR claim under New York law in their original complaint or in their amended complaint. NHSR claims under CPLR § 214-g do *not* require an employment relationship and are routinely brought in sexual abuse cases. Defendants' negligent omission of this claim after Wilhelmina's denial was undeniably malpractice. No reasonably competent attorney pursuing a claim under the Adult Survivor's Act would have failed to make such an allegation.

*Failure to Plead NHSR Under California Law*

59. *Third*, Defendants inexplicably failed to allege an NHSR claim under California law

in their original complaint or in their amended complaint. Defendants *knew* that Wilhelmina was claiming that California law applied but still negligently failed to plead NHSR under California law, despite having the employment agreement. Defendants' negligent omission of this claim after Wilhelmina's denial was undeniably malpractice. No reasonably competent attorney pursuing a claim under the facts alleged above would have failed to make such an allegation.

60. *Fourth*, Defendants failed to assert and preserve conflicts-of-law and public-policy arguments grounded in New York's Adult Survivors Act and Wilhelmina's own New York contacts and financial account information. As alleged above, Wilhelmina's Immigration Filings, account data, and Plaintiff's work in New York provided a strong factual basis for arguing that New York's interests and the Adult Survivors Act's remedial public policy outweighed the contractual choice-of-law provision and that importing California's shorter limitations period would improperly undermine that policy. Defendants did not meaningfully develop or preserve those arguments or the supporting record, and the court applied California law and its limitations periods without the benefit of the arguments and evidence reasonably competent counsel would have presented.

61. Defendants' negligent acts and omissions directly caused Plaintiff to suffer damages. Specifically, the Court's decision to grant summary judgment was based entirely on the (demonstrably false) "facts" that Plaintiff was an independent contractor and had worked for Wilhelmina in California. These "facts" were adopted by the Court based on Defendants' negligent failure to provide evidence which would have conclusively disproven such specious claims. Thereafter, Defendants negligently failed to timely file a Notice of Appeal while they were still the attorneys of record, allowing twenty-one days to pass without preserving Plaintiff's rights to appeal and without informing Plaintiff of his rights to seek appellate review. Upon

11

information and belief, Defendants provided the case file to Plaintiff's current counsel on June 29, 2025.

62. But for Defendants' negligent acts and omissions, Plaintiff would have defeated Wilhelmina's motion for summary judgment, proceeded to trial, and recovered compensatory and punitive damages for severe and permanent emotional and physical injuries.

63. As a result of Defendants' malpractice, Plaintiff has suffered severe emotional distress, depression, anxiety, loss of self-confidence, and permanent harm from the abuse and lost opportunity for justice.

64. As a result of Defendants' negligent acts and omissions, Plaintiff is forever barred from recovering any compensatory damages for the severe and permanent injuries he has suffered.

## FIRST CAUSE OF ACTION
### (Legal Malpractice)

65. Plaintiff repeats and realleges all of the foregoing facts as if fully set forth herein.

66. Defendants owed Plaintiff a duty to exercise reasonable care in legal representation.

67. Defendants breached this duty by failing to plead negligent hiring, supervision, and retention claims under New York and California law, failing to submit dispositive evidence in the form of Wilhelmina's Immigration Filings, and failing to assert and preserve conflicts-of-law and public-policy arguments grounded in New York's Adult Survivors Act and Wilhelmina's New York contacts.

68. Defendants' breaches directly and proximately caused Plaintiff's damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages to punish Defendants' grossly negligent conduct and deter similar future conduct;

c. Attorneys' fees as permitted by law, costs, and disbursements;

d. Pre-judgment and post-judgment interest;

e. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
      November 19, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: _____
Daniel Needham, Esq.
Jon L. Norinsberg, Esq.
Bennitta Joseph, Esq.
825 Third Ave, Suite 2100
New York, New York 10022
Tel.: (212) 227-5700
*Attorneys for Plaintiff*